# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHAEL CAHALL,                          :
                                         :  C.A. No. K19C-09-025 WLW
                    Plaintiff,           :
                                         :
        v.                               :
                                         :
SAFWAT NASR and                          :
JOHN SAMUEL CARPENTER, IV,               :
                                         :
                    Defendants.          :

Submitted: March 17, 2020
Decided: June 30, 2020

## ORDER

Defendant Carpenter's Motion to Dismiss
*Granted in part; Denied in part.*

Gary R. Dodge, Esquire at Curley Dodge Fitzgerald & Funk, LLC, Dover, Delaware; attorney for Plaintiff.

David C. Zerbato, Esquire of Morton Valihura & Zerbato, LLC, Greenville, Delaware; attorney for Defendant John S. Carpenter, IV.

Chandra J. Williams, Esquire of Rhodunda Williams & Kondraschow, LLC, Wilmington, Delaware; attorney for Defendant Safwat Nasr.

WITHAM, R.J.

## INTRODUCTION

Presently before the Court is Defendant, John Samuel Carpenter's, Motion to Dismiss the Complaint pursuant to Superior Court Civil Rules 12(b)(6) and 9(b). After considering Defendant Carpenter's Motion, Plaintiff's Answer in Opposition, the applicable legal authority, and the record of the case, it appears to the Court that:

## FACTUAL AND PROCEDURAL HISTORY

1. On November 6, 2017, John Samuel Carpenter, IV, a licensed real estate salesperson, Defendant in this case ("Defendant Carpenter"), assisted Safwat Nasr, his Co-Defendant ("Defendant Nasr"), in the purchase of a house located at 1099 Hickory Ridge Road, Smyrna, Delaware ("the Property") as a real estate agent.[1] On October 4, 2017, Defendant Carpenter issued a ten thousand dollar check from his personal account titled "JSCARPENTER INVESTMENTS, LLC," made payable to the attorney who handled the purchase of the Property.[2] A Kent County real estate broker disclosed to all prospective purchasers, including Defendant Nasr, that the Property needed major repairs, including the repairs in the basement that was "wet."[3] The water problems were allegedly in part attributable to an earlier faulty addition of an ingress and egress window at the northeastern corner of the residence.[4]

---

[1] Compl. ¶ 4.

[2] *Id.* at ¶ 5. Defendant claims that the check represented a loan to cover closing costs for the transaction, which Mr. Nasr repaid to Defendant Carpenter at the closing.

[3] *Id.* at ¶ 6.

[4] *Id.* at ¶ 7.

2

2. After Defendant Nasr purchased the property, he listed it for sale again with the help of Defendant Carpenter as his listing agent.[5] As a part of the listing process, on or about March 7, 2018, Defendant Nasr completed the Seller's Disclosure of Real Property Condition report ("the Disclosure"), as required by Delaware law.[6] Defendant Carpenter made the Disclosure available to potential buyers, including Michael Cahall, Plaintiff in this case.[7] Plaintiff inspected the property but did not notice the water damage.[8] In March of 2018, Plaintiff submitted an offer to purchase the Property, which was contingent on the receipt and satisfactory review of the Disclosure.[9]

3. Plaintiff and Defendant Nasr subsequently signed the Agreement of Sale.[10] Afterward, Plaintiff received the Disclosure, which did not contain information about the water damage and answered questions about prior or current water damage in the negative.[11] Plaintiff acquired title to the property on May 14, 2018, and the Disclosure

---

[5] *Id.* at ¶ 10.

[6] *Id.* at ¶ 11.

[7] *Id.* The Complaint also alleges that Defendant Carpenter assisted Defendant Nasr in preparing the Disclosure or, at the very least, provided some input into the preparation.

[8] *Id.* at ¶ 12.

[9] *Id.* at ¶ 13.

[10] *Id.*

[11] *Id.* Question #80 asked: "Is there any water leakage, accumulation, or dampness within the basement or crawlspace?" The answer stated: "No." Question #81 asked: "Have there been any repairs or other attempts to control any water or dampness problem in the basement or crawlspace?"

was never updated nor modified prior to that date.[12] Subsequent to occupying the Property, Plaintiff began to notice significant water problems in the basement, particularly in the area of the ingress and egress window near the northeastern corner of the residence.[13] The water problems made much of the basement unusable.[14] Plaintiff filed this action against Defendant Nasr and Defendant Carpenter.[15] Plaintiff made several allegations against Defendant Carpenter specifically: Count II alleged a breach of contract, Count III alleged a breach of the statutory obligation to disclose defects, Count IV alleged fraud, and Count V alleged that Plaintiff is entitled to an award of the attorney's fees from Defendant Carpenter.[16] Defendant Carpenter filed a Motion to Dismiss all counts against him.

## PARTIES' CONTENTIONS

4. Defendant first argues that Count II of the Complaint, which is based on the breach of contract claim, should be dismissed against him because he is not and was never a party to the contract involved in this case.[17] Defendant further explains that

The answer stated: "No."

[12] *Id.* at ¶ 19.

[13] *Id.* at ¶ 26.

[14] *Id.*

[15] *See* Compl.

[16] *See* Compl. Plaintiff made all the same allegations against Defendant Nasr.

[17] *See* Defendant's Motion to Dismiss ("Def. Mot.") ¶ 3. The contract Plaintiff is referring to is the Sales Agreement between Co-Defendant Nasr and himself.

4

the fact that Mr. Carpenter wrote a check to Mr. Nasr's attorney in connection with the purchase of the Property did not make him a co-owner, and that the payment was a loan to cover closing costs, which was repaid at closing.[18] Defendant argues that Count III of the Complaint, which is based on statutory requirement to disclose defects to real estate buyers, should be dismissed against him because it only applies to the sellers of real estate, which he is not in this case.[19] Defendant claims that Count IV of the Complaint, which is based on the allegations of fraud, should also be dismissed against him because Plaintiff failed to plead fraud elements with particularity, including the fact that Mr. Carpenter knew about any defect in the Property.[20] Finally, Defendant argues that Count V, which relates to the attorney's fees, should be dismissed against him because he was not a party to the Sales Agreement that included a fee-shifting clause.[21]

5. Plaintiff argues that Defendant was a part of a partnership that purchased the Property because he provided funds to Mr. Nasr in connection with the purchase.[22] Plaintiff further states that the dismissal of Count II against Defendant would be premature because discovery is needed to determine the nature of the relationship

---

[18] *See Id.* at ¶ 5.

[19] *Id.* at ¶ 7.

[20] *Id.* at ¶ 8.

[21] *Id.* at ¶ 10.

[22] Plaintiff's Answer to Motion to Dismiss ("Pl. Answer") ¶ 2.

between Defendants.[23] Plaintiff further asserts that Count III of the Complaint should not be dismissed against Defendant because the Buyer Property Protection Act creates a duty to disclose defects not only for sellers of real estate but also for their agents and subagents.[24] Plaintiff also claims that he pled sufficient facts to allege that Defendant Carpenter committed fraud because he specifically addressed all elements of the claim, including the reason why Defendant knew about the defects in the house.[25] Plaintiff argues that Count V of the Complaint should not be dismissed because Defendant was a seller under the circumstances of this case and was, therefore, a party to the contract that included a fee-shifting clause.[26]

## STANDARD OF REVIEW

6. On a motion to dismiss pursuant to Rule 12(b)(6), the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of its [complaint] would the [plaintiff] be entitled to relief."[27] Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing

---

[23] *Id.* at ¶ 3.

[24] *Id.* at ¶ 5. Plaintiff states that under 6 *Del. C.* § 2570, Defendant is, at a minimum, a subagent and, if he is a broker, an agent of the seller.

[25] *See Id.* at ¶ 8.

[26] *Id.* at ¶ 9.

[27] *Alpha Contracting Services, Inc.*, 2019 WL 151482, at *1 (Del. Super. Jan. 9, 2019) (citing *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000)).

party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[28] "Superior Court Civil Rule 9(b) requires, in pertinent part, '[i]n all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity.'"[29]

## DISCUSSION

### A. Count II, Breach of Contract

7. "In order to survive a motion to dismiss for failure to state a breach of contract claim, a plaintiff must allege: (1) the existence of a contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the plaintiff."[30] Furthermore, to recover damages, a plaintiff alleging breach of contract must show that he or she substantially complied with all provisions of the contract.[31] A contract can be an express one and an implied-in-fact one, which is a legal equivalent to an express contract.[32] The difference between the

---

[28] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002).

[29] *Gray Dawn Acres, LLC. v. Lockwood*, 2012 WL 1413574, at *1 (Del. Super. Jan. 26, 2012).

[30] *Ridley v. Bayhealth Medical Center, Inc.*, 2018 WL 1567609, at *7 (Del. Super. March 20, 2018).

[31] *Id.*

[32] *See Id.* (quoting *Lawrence v. DiBiase*, 2001 WL 1456656, at *5 (Del. Super. Feb. 27, 2001).

two is how the existence of the contract is established.[33]

8. "An express agreement is arrived at by words, while an implied agreement is arrived at by acts."[34] To determine whether an implied-in-fact contract exists, one should inquire whether the parties have "indicated their assent to the contract."[35] Therefore, to establish the existence of an implied-in-fact contract, a plaintiff must demonstrate that the parties' actions established a "meeting of the minds" on all critical terms of the contract.[36]

9. Here, Plaintiff did not allege sufficient facts for the Court to infer that a contractual relationship between him and Defendant Carpenter existed. The fact that Defendant wrote a check to Mr. Nasr's attorney does not make him a party to a contract Plaintiff formed with Mr. Nasr. No express contract between Plaintiff and Defendant Carpenter exists in this case.[37] Plaintiff also did not allege any facts that would indicate that Plaintiff and Defendant Carpenter came to a meeting of the minds on the essential terms of any contract.

10. Plaintiff also suggests that both Defendants were a part of the partnership

---

[33] *Id.* (quoting Lawrence, 2001 WL 1456656, at *5).

[34] *Id.* (quoting *Trincia v. Testardi*, 57 A.2d 639, 642 (Del. Ch. Feb. 28, 1948).

[35] *Id.* (quoting *Lawrence*, 2001 WL 1456656, at *5).

[36] *Id.* (*Heiman, Aber & Goldlust v. Ingram*, 1999 WL 1240904, at *1 (Del. Super. Aug. 18, 1999).

[37] Plaintiff does not claim that Defendant Carpenter signed the Sales Agreement.

that bought this property before selling it to him.[38] However, Plaintiff did not allege sufficient facts to infer that such a partnership, in fact, existed. "Under the Delaware Revised Uniform Partnership Act ("DRUPA"), a partnership is formed when two or more persons either (i) operate a for-profit business as co-owners or (ii) 'carry on any purpose or activity not for profit if the persons intend to form a partnership.'"[39] No singularly dispositive consideration that determines whether a partnership existed between two parties exists in Delaware.[40] Instead, "[t]he creation of a partnership is a question of *intent*."[41]

11. A partnership exists if the parties had a "common obligation to share losses as well as profits."[42] In other words, "[t]o prove the existence of a partnership, one must show the intent to divide the profits of the venture."[43] Accordingly, "[t]he receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business..."[44] Delaware courts determined that it is not essential to the

---

[38] *See* Pl. Answer ¶ 2.

[39] *Grunstein v. Silva*, 2011 WL 378782, at *9 (Del. Ch. Jan. 31, 2011) (quoting 6 Del. C. § 15-202(a)).

[40] *Id.* (quoting *Ramone v. Lang*, 2006 WL 4762877, at *12 (Del.Ch. Apr.3, 2006).

[41] *Id.* (quoting *Hynansky v. Vietri*, 2003 WL 21976031, at *5 (Del.Ch. Aug.7, 2003) (emphasis added).

[42] *Id.* (quoting *Ramone*, 2006 WL 905347, at *12).

[43] *Hynansky*, 2003 WL 21976031, at *5.

[44] *In re Estate of Fenimore*, 1999 WL 959204, at *4 (quoting 6 *Del.C.* § 1507).

existence of a partnership for all partners to participate in decision-making and to share liabilities on dissolution, but *at least one* of these factors must be present, *and* there must also be an intent to share profits.[45] The standard of proof required to establish that a partnership existed is stricter when the action is brought by one of the partners than if it is brought by a third party who claims that a partnership existed.[46] "Nonetheless, one must show the existence of the partnership by a preponderance of the evidence, and to do so one may demonstrate an intention to share profits and losses, and may use acts, the dealings and conduct of the parties, and admissions of the parties to do so."[47]

12. Here, the sole fact that Defendant Carpenter wrote a check to Mr. Nasr's attorney does not indicate that the two Defendants were partners or had an intent to form such a partnership. Plaintiff also did not allege any facts in the Complaint that would indicate that Defendants planned to share profits, losses, or liabilities, or that they both participated in the decision-making process. Furthermore, it appears that the check Defendant Carpenter wrote was simply a loan to Mr. Nasr.[48] Giving a check to another person does not, *on its own*, make the two people partners, even if that check is coming from what is labeled "an investment account." Additionally, giving a check

---

[45] *Id.* (citing *Chaiken v. Employment Security Commission,* 274 A.2d 707, 710 ( Del. Super. 1971) (emphasis added).

[46] *Id.* (citing *Garber v. Whittaker,* 174 A. 34, 36 (Del. Super. 1934).

[47] *Id.* (citing *Jones v. Purcell,* 62 A. 149, 150 ( Del. Super. 1905).

[48] *See* Def. Mot. ¶ 5.

to another person does not create an equitable interest in that person's property. Instead, equitable interest in the property is a narrow exception to the Statute of Frauds that is created when a purchaser, for example, acquires a property but does not hold the deed to that property yet or acquires it on behalf of another person.[49] Therefore, because Plaintiff did not allege facts that establish the existence of the contract between him and Defendant Carpenter, Defendant's Motion to Dismiss Count II of the Complaint against him is GRANTED.

### B. Count III, Statutory Obligation to Disclose

13. 6 *Del. C.* § 2570 – 2578, also referred to as the Buyer Property Protection Act ("BPPA"), creates a requirement to disclose real estate defects to prospective buyers.[50] It is clear that BPPA imposes an obligation on the seller of real estate to disclose all material defects of the property.[51] 6 *Del. C.* § 2572(a) states that "a seller transferring residential real property shall disclose, in writing, to the buyer, agent and subagent, as applicable, all material defects of that property that are known at the time the property is offered for sale or that are known prior to the time of final settlement."[52] Agents and subagents mentioned in the statute refer to brokers and

---

[49] See *Quill v. Malizia*, 2005 WL 578975, at *10 (Del. Ch. March 4, 2005) (discussing the narrow exception); *see also Goldstein v. Mayor and Council of City of Wilmington*, 447 A.2d 423 (Del. 1982).

[50] *See* 6 *Del. C.* § 2570 – 2578.

[51] *See* 6 *Del. C.* § 2572.

[52] *Id.*

salespersons.[53] 6 *Del. C.* § 2575 also provides that:

"The buyer shall not have a cause of action against the *seller, agent and/or subagent* for:

(1) Material defects in condition of the residential real property disclosed to the buyer prior to the buyer making an offer to purchase;

(2) Material defects developed after the offer was made but disclosed prior to final settlement, provided seller has complied with the agreement of sale; or

(3) Material defects which occur after final settlement."[54]

14. The language of 6 *Del. C.* § 2575 indicates that a buyer may have a cause of action not only against the seller of the real estate but also against the agent or subagent of the seller. Furthermore, this proposition is consistent with the regulations for real estate licensees' conduct.[55] Notably, the courts in at least one other jurisdiction found that real estate agents may be liable under different legal doctrines for the non-disclosure of real estate defects to potential buyers *if* the agents knew or should have known about the defects.[56]

---

[53] *See* 6 *Del. C.* § 2570(1),(6).

[54] 6 *Del. C.* § 2575 (emphasis added).

[55] *See* 24 *Del. C.* § 2912(a)(11). The statute states that a real estate licensee should be subject to disciplinary actions if the licensee "[h]as misrepresented the availability of or the content of any statutorily required form such as the seller's disclosure of real property condition report form and/or the radon disclosure…"

[56] *See Revitz v. Terell*, 572 So.2d 996 (Fla. Dist. Ct. App., 1990); *see also Syvrud v. Today Real Estate, Inc.*, 858 So.2d 1125 (Fla. Dist. Ct. App., Oct. 31, 2003).

15. Here, Plaintiff did not allege sufficient facts to establish that Defendant Carpenter was a seller covered by the statutory requirement. However, Defendant Carpenter was an agent or a subagent as defined in the statute because.[57] Reading the Act as a whole, it appears to the Court that agents and subagents are also required to disclose the real estate defects to potential buyers at least under the facts of this case where the relationship between the two Defendants is longstanding, and Defendant Carpenter likely knew or should have known about the defects in the Property. Therefore, further discovery in this case is necessary to establish whether Defendant Carpenter was aware of the defect when he presented the Disclosure to the prospective buyers, including Plaintiff.

16. Another issue related to agents and subagents' liability under the BPPA is the fact that it is unclear under Delaware law whether the Act creates an independent cause of action.[58] However, given the fact that the Act appears to create a duty for agents and subagents to disclose defects to potential buyers under the circumstances

---

[57] *See* 6 *Del. C.* § 2570.

[58] *See Iacono v. Barici*, 2006 WL 3844208, at *4 (Del. Super. Dec. 26, 2006). The Court stated "[t]his Court recognizes that some questions exist as to whether in some cases there may be a valid private cause of action for violation of the Buyer Property Protection Act. The ambiguity is partly founded in the language of Title 6 section 2583 which provides for enhanced penalties in cases where an elder or disabled person "suffers damages or injury as a result of an offense or violation described *in this chapter*…" The argument follows that one cannot apply "enhanced" penalties if penalties are not allowed in the first place. On the other hand, support for the argument that the Buyer Property Protection Act merely creates a statutory duty…can be found in the history of the Consumer Fraud Act. It was not until June 30, 2003 that the General Assembly added express language to the Consumer Fraud Act providing for a private cause of action. If it was the legislature's intent to create a private right under the Buyer Property Protection Act then it could have easily done so at that time."

13

discussed above, it would logically follow that the Act also creates a private cause of action against the agents who are most often not parties to the sales agreements and, therefore, cannot be sued for a breach of contract.[59] Therefore, because further discovery is needed to establish whether Defendant Carpenter knew about the defects in the Property when he presented the Disclosure that did not contain that information to Plaintiff, the Motion to Dismiss as to Count III is DENIED.

### C.  Count IV, Fraud

17.  A party claiming fraud must prove they were intentionally misled.[60] "At common law, fraud (or deceit) consists of (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance."[61] It is important to note that fraud does not consist of just misrepresentations and may also occur "through a deliberate concealment of material facts."[62]

18.  "Under Superior Court Civil Rule 9(b), a complaint for fraud must be pleaded with particularity. Specifically, a complaint for fraud must "refer to 'the time,

---

[59] Plaintiff does not argue that no private cause of action exists under the BPPA.

[60] *Talley-Siders v. Mayhorn*, 2018 WL 5046095, at *2 (October 17, 2018).

[61] *Stephenson v. Capano Development, Inc.,* 462 A.2d 1069, 1074 (Del. 1983).

[62] *Id.*

place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"[63] Defendant's argument for dismissing this Count is based solely on Plaintiff's alleged failure to plead the fraud allegations with particularity. Notably, "[m]alice, intent, *knowledge*, and other condition of mind of a person may be averred generally."[64] Still, "where pleading a claim of fraud has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pled facts from which it can reasonably be inferred that this 'something' was knowable and that the defendant was in a position to know it."[65]

19. The Complaint, in pertinent part, states that Defendant Carpenter provided the Disclosure that omitted the information about the water damage to Plaintiff sometime right after Plaintiff made an offer to purchase the Property in March of 2018.[66] The Complaint further states that Plaintiff Carpenter provided this Disclosure to Plaintiff in an effort to sell the Property to Plaintiff.[67] The Complaint also states that Defendant Carpenter was aware of the water damage because he was involved in

---

[63] *Gray Dawn Acres, LLC.*, 2012 WL 1413574, at *2.

[64] *Mooney v. Pioneer Natural Resources Company*, 2017 WL 4857133, at *4 (Del. Super. Oct. 24, 2017) (quoting *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *6 (Del. Super. Ct. Sept. 25, 2015) (emphasis added).

[65] *Id.* (quoting *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207–08 (Del. Ch. 2006), *aff'd sub nom.*

[66] See Compl. ¶ 11-14.

[67] *See Id.* at ¶ 11.

Defendant Nasr's purchase of the Property, and the damage was disclosed in the course of that transaction.[68] The Complaint states that Defendant Carpenter was the listing agent during the re-sale, which, presumably, would put him on notice of the alleged damage.[69] The Complaint further asserts that Plaintiff relied on the information contained in the Disclosure when he purchased the Property.[70] Plaintiff suffered damages as a result.[71] Defendant Carpenter, as the sales agent involved in the transaction, was interested in the sale of the Property.[72] Therefore, because Plaintiff alleged sufficient facts in the Complaint to support the allegation of fraud, the Motion to Dismiss as to Count IV is DENIED.

### D. Count V, Attorney's Fees

20. As discussed above, the Sales Agreement involved in this case is between Defendant Nasr and Plaintiff. Defendant Carpenter is not a party to the Sales Agreement. The Sales Agreement does, in fact, contain an attorney's fee shifting

---

[68] *See Id.* at ¶ 6.

[69] *See Id.* at ¶ 10.

[70] *See Id.* at ¶ 51-52.

[71] *See Id.* at ¶ 26.

[72] *See Id.* at ¶ 52. The Complaint states that both Defendants misrepresented this information to hide the presence of water from prospective buyers. Defendant Carpenter did not necessarily make the statements about the absence of the water damage himself. However, if he was aware of the damage prior to presenting the Disclosure to Plaintiff in an effort to close the deal, it could reasonably be inferred that he concealed material facts. Furthermore, the Complaint alleges that Defendant Carpenter assisted in the preparations of the Disclosure.

provision in the event of litigation and when either Buyer or Seller is unsuccessful.[73] However, because Defendant Carpenter is not a seller in this case, this provision does not apply to him in connection with the legal action filed by Buyer-Plaintiff. Therefore, because Defendant Carpenter is not a party to the contract that includes a fee shifting clause, Defendant's Motion to Dismiss Count V of the Complaint against him is GRANTED.

## CONCLUSION

21. For the reasons mentioned above, Defendant's Motion to Dismiss is GRANTED as to Counts II and V and DENIED as to Counts III and IV.

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

---

[73] *See* Compl. Ex. D. p. 7.